UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

DAWSON GROUP, INC. d/b/a DAWSON LOGISTICS,

    Plaintiff,

vs.

RICHARD MILLER, an individual and ENVISIONWISE, LLC

    Defendants.

## COMPLAINT

Now Comes Dawson Group, Inc. d/b/a Dawson Logistics ("Dawson Logistics") by and through its undersigned counsel for a cause of action against Richard Miller, as an individual, and Envisionwise, LLC (collectively "Defendants") and hereby allege as follows:

### PARTIES, JURISDICTION AND VENUE

1. Dawson is a corporation organized under the laws of Illinois with a principal place of business located at 2220 State Road 157 in Glen Carbon, Illinois.

2. Richard Miller is an individual who maintains residency in the Southern District of Illinois and is the President of Envisionwise.

3. Envisionwise is a limited liability company with a principal place of business located at 18 Champaign St. in Westville, Illinois.

4. This Court's jurisdiction arises from the fact that: (i) this is an action brought under the Trademark Laws of the United States, 15 U.S.C. §§ 1051-1127, jurisdiction being conferred by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338; and (ii) certain claims are joined with substantial and

related claims under the Trademark Laws of the United States, 15 U.S.C. §§ 1051-1127, jurisdiction being conferred by 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

5. Venue is proper in this Court under 28 U.S.C. §1391(b)(1) in that at least one of the Defendants resides in this judicial district and all Defendants are residents of the State of Illinois in which this judicial district is located and under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is also proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because Defendants have extensive contacts with, and conduct business within, the State of Illinois and this judicial district.

## THE DAWSON LOGISTICS MARK

6. Dawson Logistics is the owner of the common law trademark DAWSON LOGISTICS, which Dawson Logistics has been using in connection with logistics and transportation services since at least as early as 2000.

7. Since its inception, Dawson Logistics continuously used and promoted the DAWSON LOGISTICS mark in association with its services. Dawson Logistics spent significant sums of money to advertise and promote the DAWSON LOGISTICS mark in association with its services such that by 2004 the DAWSON LOGISTICS mark had achieved a level of distinctness among consumers and became a unique source identifier for the company.

## THE PARTIES' ORAL AGREEMENT

8. In or around July, 2004, Dawson Logistics decided to develop an Internet presence to further grow the company and hired Defendants as independent contractors to help them achieve the company's online objectives.

9. As part of the services, Dawson Logistics instructed Defendants to register the DAWSONLOGISTICS.COM domain name on behalf of Dawson Logistics (in the name of Dawson Logistics) and to develop the company website. Dawson Logistics also instructed Defendants, over a period of time, to develop certain sets of software code, including a warehouse management platform, an outbound call center platform, multiple customer order management platforms, and an emergency response logistics platform ("Developed Platforms"). Moreover, it was agreed that Defendants would host the website and Developed Platforms on Defendants' servers.

10. The Developed Platforms reside on Defendants' servers and are made available online through the subdomains mosaic.dawsonlogistics.com and wms.dawsonlogistics.com.

11. Dawson Logistics paid for all costs and fees associated with the purchase of the DAWSONLOGISTICS.COM domain name, the development of its website, and the development of the Developed Platforms.

12. Once the Developed Platforms were developed, in addition to the initial development fees it paid Defendants, Dawson Logistics agreed to pay a license fee in the amount of $6,000 per month and an annual hosting fee in the amount of $7,200 per year.

13. Dawson Logistics has paid these fees to Defendants in accordance with the terms of its oral agreement with Defendants.

### DEFENDANTS' BAD FAITH AND EXTORTION

14. Dawson Logistics recently discovered that instead of Defendants registering the DAWSONLOGISTICS.COM domain name in the name of Dawson Logistics, on or about July 23, 2004, Defendants registered the DAWSONLOGISTICS.COM domain name in the name of Richard Miller. Moreover, Mr. Miller used his company, Envisionwise, LLC, as an instrument to carry out his own

willful and deliberate infringement by identifying Envisionwise and its corporate address as part of the registration.

15. Believing that the domain name was properly registered in the name of Dawson Logistics, since 2004, Dawson Logistics has been using the DAWSONLOGISTICS.COM domain name as the primary source indicator for its business.

16. On August 7, 2015, after more than 11 years of the Defendants and Dawson Logistics operating under the terms of their oral agreement, Richard Miller sent an e-mail message to Dawson Logistics stating, in relevant part,

> I write to advise that I will no longer agree to provide the system that resides at dawsonlogistics.com and all of its subdomains (i.e. mosaic.dawsonlogistics.com, wms.dawsonlogistics.com) under the current compensation structure or on a month to month basis. Effective September 1, 2015, payment will be required on an annual basis in the amount of $84,000.00. Payment must be made in full for the upcoming year of service (9/1/15-8/31/16) without right of refund should you terminate my services before the completion of such year of service. If such annual payment is not received, in full, by September 1, 2015, the system will be shut down and all services terminated.

17. If the DAWSONLOGISTICS.COM website is such down, Dawson Logistics would effectively be put out of business because its company-wide e-mail, warehousing management system, call center operations platform and customer order fulfillment systems for all warehousing and fulfillment and call center project clients would be inaccessible, precluding Dawson Logistics from performing any services for those clients. Furthermore, Dawson Logistics' e-mail program used to perform its emergency response logistics services to ensure delivery of life-critical specialty medication to critically ill patients, which is hosted

through the Developed Platforms, would be shut down.  If Dawson Logistics' e-mail system is shut down, life saving medications would not arrive to those critically ill patients.

18. Defendants' extortion letter is basically an attempt to license back the DAWSONLOGISTICS.COM domain name to Dawson Logistics for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services.  Moreover, it is a blatant anticipatory breach of the oral agreement between the parties.

19. Dawson Logistics made a demand upon Defendants to immediately transfer ownership of the DAWSONLOGISTICS.COM domain name and, as of the filing of this complaint, Defendants have not transferred the domain name to Dawson Logistics.

20. If Defendants are not enjoined, Dawson Logistics will be precluded from offering any services to its warehousing and fulfillment and call center projects clients and would be unable to perform its emergency response logistics services for critically ill patients, causing those clients to likely suffer irreparable harm.

21. Moreover, because Defendants have control of the DAWSONLOGISTICS.COM domain name, they can redirect DAWSONLOGISTICS.COM to another website for commercial gain and create a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of that website with Dawson Logistics and the DAWSON LOGISTICS mark.

22. Defendants registered the DAWSONLOGISTICS.COM domain name in bad faith with the knowledge that it is nearly identical and confusingly similar to the DAWSON LOGISTICS mark owned by Dawson Logistics.

23. Defendants do not have any intellectual property rights in the DAWSON LOGISTICS mark or any other term identical with or similar to the DAWSON LOGISTICS mark.

26. The DAWSONLOGISTICS.COM domain name is not the legal name of Defendants, and is not otherwise commonly used to identify Defendants.

27. Defendants made no legitimate use of any term identical or similar to the DAWSON LOGISTICS mark before registering the DAWSONLOGISTICS.COM domain name.

28. Defendants' registration and use of the DAWSONLOGISTICS.COM domain name has been and continues to be made with a bad faith intent to profit from the DAWSON LOGISTICS mark that has become central to Dawson Logistics' business.

29. Defendants' use of the DAWSON LOGISTICS mark — namely holding it hostage — is not a bona fide noncommercial or fair use.

## FIRST CLAIM FOR RELIEF
## (CYBERSQUATTING)

30. Dawson Logistics re-alleges all of the foregoing paragraphs as if fully set forth herein.

31. Defendants' actions constitute cybersquatting in violation of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

32. Defendants' acts greatly and irreparably injure Dawson Logistics and will continue to so injure Dawson Logistics unless restrained by this Court; wherefore, Dawson Logistics is without an adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## (CONVERSION)

33. Dawson Logistics re-alleges all of the foregoing paragraphs as if fully set forth herein.

34.     Dawson Logistics is the rightful owner of the DAWSONLOGISTICS.COM domain name, and has an absolute and unconditional right to immediate possession of that domain name.

35.     Dawson Logistics has made a demand to Defendants for the turn over of the DAWSONLOGISTICS.COM domain name to Dawson Logistics.

36.     By registering himself as the Registrant and owner of the DAWSONLOGISTICS.COM domain name and listing Envisionwise and its corporate address as part of the registration, maintaining its registration and refusing to turn over that domain name to its rightful owner (Dawson Logistics), and holding it hostage, Defendants have wrongfully and without authorization assumed control, dominion and/or ownership over the domain name.

37.     As a direct and proximate result of Defendants' conversion, Dawson Logistics has suffered damages in an amount to be proven at trial.

38.     The actions of Defendants as described above were done intentionally, knowing that they had no legitimate basis whatsoever to assume control and ownership of the domain name DAWSONLOGISTICS.COM.  Defendants acted with a wanton disregard of Dawson Logistics' rights and with the intent to take unfair advantage of and cause damage to Dawson Logistics. Dawson Logistics is therefore entitled to punitive damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT, 28 U.S.C. §2201)

39.     Dawson Logistics re-alleges all of the foregoing paragraphs as if fully set forth herein.

40.     There is a real, immediate, substantial and justiciable controversy between Dawson Logistics on the one hand, and Defendants on the other hand, concerning whether Dawson

Logistics has a license to continue to use and operate the DAWSONLOGISTICS.COM website and Developed Platforms such that Defendants do not have the right to shut down use of the website.

41. Defendants intended, and in fact knew, understood, and agreed that the DAWSONLOGISTICS.COM website and Developed Platforms were developed for the purpose of promoting and conducting Dawson Logistics' business, and the parties proceeded to conduct themselves accordingly.

42. Since 2004, Dawson Logistics has been using the DAWSONLOGISTICS.COM website and the Developed Platforms to conduct its business and Defendants have been providing the software and hosting services for the operation and use of the DAWSONLOGISTICS.COM website and Developed Platforms.

43. An actual controversy of a justiciable nature exists between Dawson Logistics and Defendants involving the DAWSONLOGISTICS.COM website and the Developed Platforms.

44. Dawson Logistics requests a judicial declaration that Dawson Logistics has had, and continues to have a license to use and operate the DAWSONLOGISTICS.COM website and Developed Platforms and Defendants do not have the right to shut down access to the same.

45. Dawson Logistics will be greatly injured and irreparably harmed unless this Court makes such judicial declaration. Dawson Logistics has no adequate remedy at law.

**WHEREFORE**, Dawson Logistics prays:

1. That Defendants, and all persons acting in concert or participating with Defendants, be preliminarily and permanently enjoined from registering or maintaining any registration of the DAWSONLOGISTICS.COM domain name or any other names, words, designations or symbols

consisting of, incorporating in whole or part, or otherwise confusingly similar to the DAWSON LOGISTICS mark or any other trade names, trademarks or service marks of Dawson Logistics.

2. That Defendants be ordered to disclose to the Court and Dawson Logistics all other domain name registrations owned directly or indirectly by Defendants, or by entities in which Defendants have a financial interest, to permit the Court and Dawson Logistics to consider whether any such other registrations should be subject to relief in this matter.

3. That Defendants, and all persons acting in concert or participating with Defendants, be ordered to transfer to Dawson Logistics the DAWSONLOGISTICS.COM domain name and any other infringing domain names as may be determined by the Court as appropriate herein for relief. 15 U.S.C. § 1125(d)(1)(C).

4. That Defendant be ordered to pay statutory damages in the amount of $100,000.00 per infringing domain name. 15 U.S.C. § 1117(d).

5. That the Court award Dawson Logistics three times the damages suffered by reason of the intentional, unlawful acts of Defendants as set forth in this Complaint. 15 U.S.C. §§ 1117(a).

6. That Defendants be ordered to pay to Dawson Logistics the costs of this action and its reasonable attorneys' fees. 15 U.S.C. §§ 1117(a).

7. That punitive damages be awarded to Dawson Logistics.

8. That declaratory judgment be entered in favor of Dawson Logistics and against Defendants, declaring that Dawson Logistics has had, and continues to have a license to the DAWSONLOGISTICS.COM website and Developed Platforms and that Defendants cannot shut

down Dawson Logistics' access and use of the DAWSONLOGISTICS.COM website and Developed Platforms.

      9.      That Dawson Logistics shall have such other relief as this Court may deem just and proper.

**JURY DEMAND REQUEST.**

*DAWSON GROUP, INC. d/b/a DAWSON LOGISTICS, Plaintiff*

By:_____/s/ James Craney_____
LEWIS BRISBOIS BISGAARD & SMITH LLP
James Craney, #6282699

LEWIS BRISBOIS BISGAARD & SMTIH LLP
Mark Twain Plaza II, Suite 300
103 Vandalia St.
Edwardsville, IL 62025
618.307.7290 Main
618.692.6099 Fax

## **CERTIFICATE OF SERVICE**

The undersigned certified that on **August 24, 2015,** the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ James Carney
LEWIS BRISBOIS BISGAARD & SMITH LLP
